Case of In Re Asbestos Products Liability Litigation. Good morning, Mr. Myers. If the court pleases, my name is Richard Myers. My firm and I represent John and Roberta DeVries. Mr. DeVries has since passed on, so it's Mrs. DeVries. I would like to reserve three minutes for rebuttal. Three minutes. Your Honor, under maritime law, sailors are entitled to the highest degree of protection. These cases from the U.S. Supreme Court have said this since the 1790s. Your letter to counsel instructed us to first discuss the applicability of maritime law. I'd like to do that. It's applicable. And it doesn't matter whether we're in federal court or state court. Maritime law governs. So let's turn to the consequence of maritime law. Maritime law is really the last bastion of federal common law. I sort of feel like I'm here in 1938 before Erie was decided. Because we're going to ask you to apply the best law with the best policies. And for the reasons that I'm going to give you, we suggest that those policies favor holding manufacturers of dynamic machinery aboard vessels responsible for replacement of wear parts that is reasonably foreseeable, where those wear parts contain asbestos and the asbestos cause harm. So you're talking in negligence land. When you talk about reasonable foreseeability, are you in negligence land or are you in strict liability land? Are you in both? We're in both. Tell me how you could be in both. And this really is an intersection between strict products liability and negligence because we're talking about foreseeability. But foreseeability has to do with products liability as well. Because if something is not foreseeable, it's hard to argue that somebody should be responsible. Mr. Myers, this would apply to defendants that didn't provide any asbestos, correct? Just because the machines may have used asbestos, is that where you're going? Excuse me. I won my bet. I knew you would ask that question. Yes, Your Honor. That's correct. With one exception, Delaval did supply its asbestos, and I think there's some evidence in this record that it supplied some of the replacement asbestos. Most of them did not supply asbestos. Most of them did not. That is correct. So under your theory, those folks would also be responsible because they should have foreseen that asbestos would be used on their products regardless of who supplied it. That is exactly so. And I'd like to address the reason for that. What's your best case to support that? I'm sorry? What's your best authority to support that proposition? The best case supporting it is a case that was decided since we submitted briefs in this case, and it is, if I can give it to you, it is the May case decided by the Court of Appeals in Maryland. The citation is 2015 Maryland Lexus 864. It was decided on December 18, 2015. The Court of Appeals in Maryland is equivalent to our Supreme Court in Pennsylvania. It discusses, it is a maritime case. It involves a machinist mate working on the same kind of equipment that Mr. DeVries worked, and it talks about the policy issues that underlie this case and that I want to address. I just want to confirm, you're saying the May case is a maritime case, not a Maryland state law case? It is a maritime case. It is not a Maryland state law case. Okay, thank you. They state that in the opinion. So let me come back to the policies, because Judge Restrepo is absolutely right. And at first blush, one takes pains to say, well, why should we hold somebody responsible when they didn't supply asbestos products that caused the harm in this case? And the answer is, in each situation here with these defendants, they supplied dynamic machinery to the Navy. And I use the term dynamic because it involves the function of the machinery. In each case, the machinery could not work properly without the application of asbestos. In the cases of pumps and condensers, you have to have gaskets and packing in them in order to regulate the flow of materials through them. I mean, that's what pumps do. In the case of turbines, you have to have insulation on the outside because you have to maintain the temperature inside the turbine for the superheated steam. Would the turbines have worked without asbestos insulation? Would they have worked without insulation? Well, the inside fan blades might have turned, but they would have lost the heat, and they wouldn't have supplied enough power for the ship to run. So you're asking us to form a test that's not that the product is required for the machine to function, but that it enhances the machine to function. You want to test that broad? I do, but I also, and I thought about this last night. This sort of kept me up last night because this is an important issue. What are the limitations of liability? And I thought about the machinery that the defendants supplied versus, for example, the static metal pipes that are running through the ship. And one could reasonably ask, well, why wouldn't the manufacturers of the metal pipes that are going to require asbestos insulation on them carrying steam, why shouldn't they be responsible? And the answer is because it's not dynamic. The pipes function perfectly well with or without insulation. Inside the room may be excessively hot, but the pipes carry the steam. In the case of dynamic machinery, the pumps don't work without the asbestos. They don't work without the gaskets and the packing. In the case of condensers, they don't work. They don't work. You said the turbines would still work. The turbines would, but they would not perform up to specifications. So, for example, and I don't have the horsepower in front of me, but let's assume for a moment that they were rated at 10,000 horsepower when they are properly insulated. They might only generate 1,000 horsepower, but I don't mean to say that they wouldn't work at all. So I think that in analyzing this, we want to look at the foreseeability of the use of the asbestos wear parts in terms of the functionality of the machinery. And so under your construct, you would like us to consider having a test that says the manufacturer is responsible if it knows asbestos is going to be used, specifies or instructs the consumer that they need to use asbestos for it to function, or knows that for its product to function at its expected levels, it would need an asbestos component. Exactly. I see. That is exactly it. And how do you, other than the May case, is Querin from Northern Illinois another case that would support this idea? Yes. But that was decided under state law, am I right? It was decided under state law. And if we look at the district court judge in our very case, his opinion in Schwartz, which was a state law case, do you gain any support for your view from that opinion if you're familiar with it? Well, we do. Pennsylvania has a long history starting in 1969 with the Burbage case that we cite in our brief of manufacturers of large components being responsible for the components that are contained in their machinery. So it's your view that the district court judge here, in applying the strict test, was not acting consistent with maritime law principles? He was not. And he was not acting in terms of maritime law policy either. And the policy is protect the sailors? Absolutely. So did the Sixth Circuit get a roll, too? Oh, yes. And we explain that in our brief. Again, I understand the notion of saying if you do supply the asbestos yourself, why should you be held responsible? That's what the Supreme Court of California said, too, right? Yes. But the consequences of that in terms of policy are extremely serious. And I suggest to you that you would be encouraging manufacturers of machinery to walk away from their machinery and just leave it responsible to the component manufacturers. And that certainly is not what Professor Prosser thought about in crafting strict products liability. The idea was to have everybody responsible for that product in the same courtroom, and then we can sort out those responsibilities. But the manufacturer under this construct doesn't control the product used by the component supplier. Well, they do. Explain how. Well, in many cases, they have specific products that they want applied or at least product specifications that have to be met. Do we have that in this record? Let's say we actually came up with the construct you offer. It is. It is given the instructions to use asbestos, and these are manufacturers other than DelVal that you say did not, in its original supply of the product, didn't have asbestos. What are we looking at? Well, let me jump back for a moment. With regard to the pumps and the condensers, they did have asbestos in them. These are not bare metal products. But Mr. DeVries did not go shipboard until 13 years after the ship was launched, so it's very unlikely that he was exposed to that original asbestos. If we accept, we'll call it the Myers test, if we buy into the Myers test, is there enough evidence on the record to establish causation, exposure causation, to close the loop? Yes, there is. In this case, Mr. DeVries was a lifetime non-smoker. His only asbestos exposure was aboard this ship for three years. He testified about supervising sailors working on these products on a daily basis. His testimony is very clear on this, and you don't have to infer because the record is very clear. He was exposed to asbestos daily from these products for three years. Was that the district court's perspective on it? I'm sorry? Was that the district court's perspective on it? Yes. I don't think the district court doubted for a moment that there was sufficient evidence to show harm and disease in this case. Did the district court make any conclusions about whether these manufacturers all knew at the time of sale about the hazards of asbestos other than maybe GE? Did not. So he made no findings about that issue? No, because he didn't need to do that. He found that they didn't supply, that Mr. DeVries was not exposed to asbestos supplied by those defendants. That's where the inquiry ended. So we go back to the, what are we calling it, the Myers test? Well, the Myers test, the construct would still require a showing that these original manufacturers who you now say have a duty to warn knew at that time, the time of sale, that there was a dangerous product being directed to be added to their product. And we believe that there are post-sale responsibilities as well. What is the authority to say they have a post-sale responsibility? Well, there is strict product liability. That's part of strict product liability is that while manufacturers are not the absolute insurers of their products, they are guarantors of its safety and they have a duty to do that which makes their products safe even over time, especially because this equipment is intended to be long-lived and was long-lived. My time is up and I'll be back for rebuttal. Thank you very much. All right. Mr. Dvorsky, and I know I'm mispronouncing that. Good morning, Your Honor. Shai Dvorsky with Jones Day. Thank you. I represent CBS and today I'll also be arguing on behalf of all the other defendants. All right. Under maritime law, which we agree applies here, the district court's judgment should be affirmed because defendants are only liable for products that cause harm to the plaintiff and that the defendants place into the stream of commerce, that is that they manufacture, distribute, or otherwise supply. That rule is consistent with the overwhelming majority of state tort law, with the principles underlying tort law, and with the principles underlying maritime law. With respect to the weight of authority, the May decision on its face, first of all, admits that it's taking a minority view. And second of all, while the facts of May did involve a Navy sailor, there is nothing in the May opinion that is applying maritime law. The term maritime law I don't believe even appears in the May opinion. From the very beginning of that case through the end, it is applying Maryland state law. And the state court opinions that I would commend to the court, the O'Neill case from California, the Simonetta and Broughton cases from Washington, those are the cases that represent the overwhelming majority view. And those cases are also consistent with the principles underlying tort law. To say that a duty attaches to a product, what are the reasons why a duty attaches? Generally it is that a defendant profits from the product and controls the product. And as a result of controlling the product, also has the ability and can be incentivized to make that product safer. None of those rationales apply in a circumstance like what's at issue here, where the defendants did not control and did not sell the particular product, the asbestos, that injured Mr. DeVries. You talked about the California case, I assume you're talking about O'Neill? O'Neill, yes. There's language in O'Neill, I think, that talks about a scenario not presented in that case where exposure would be inevitable in a circumstance where it would be almost expected that an asbestos component would be added to the product in order for the product to work. How do you reconcile that observation? It didn't apply in that case and perhaps you could call DICTA if you want to call it anything. But it certainly is a recognition by that court and others that there could be a scenario where the manufacturer should be responsible beyond its own product if it required for its product to function an asbestos containing or dangerous component. So O'Neill did reserve that question. I don't think it's DICTA. I think it's simply an issue that they didn't decide and suggested that it could be for another day. As an initial matter, that's not the facts of this case. The record in this case is clear that the Navy specified the use of asbestos, but there is nothing in the record to support the notion that these products required the use of asbestos or that the defendants said that they required the use of asbestos. In fact, the only record- So if we created this test, this record would not support it? This record would not support it. In fact, the only evidence in this record is to the contrary. For example, with respect to Buffalo pumps, and this is the Joint Appendix 408, the pumps eventually were used without asbestos once the Navy agreed to that, once the Navy gave up on specifying the use of asbestos. So there's no evidence in this record that would support such a test even if it were applied. In addition, as a legal matter, such a test would not be consistent with any of the principles underlying tort law or maritime law. Are you familiar with Judge Rubino's decision in Schwartz? Yes. He talks about that there are principles. Again, it's a Pennsylvania state law case, but he talks about the policy reasons why the manufacturer should be responsible under some theory that there's an interconnectedness among the manufacturers and the parts suppliers so that they all can benefit from each other. How do you explain that as not being a principle to support liability? He does talk about that in terms of forecasting Pennsylvania law with respect to strict liability only, not negligence. In terms of why that is not a sound rule of tort law, first of all, any safe product can conceivably be used with another unsafe product. And that's especially true on a ship where, as you say, everything is interconnected. To say that the manufacturer of a safe product is liable for somebody else's unsafe product, first of all, it's unjust because the manufacturer of the safe product didn't manufacture, distribute, or profit from the unsafe product. Second of all, it is potentially counterproductive because it actually reduces the incentive of the unsafe product manufacturer to make its product safer by spreading the cost of the injury across everybody who has anything to do with the ship. Third of all, it will potentially lead, if anything, to over-warning and over-testing because from the perspective of the defendant, the manufacturer of the safe product, the incentive that you'd be creating for that defendant is to go out and test every conceivable product on the ship to potentially warn about every unsafe product that could be used with the safe product. So you're in the parade of horribles. Let's talk about a very narrow scenario. The manufacturer has a product. It doesn't make this other component that has the dangerous aspects. The manufacturer says, if you want to use our product, you need to procure this dangerous substance for it to function. What is the implications of a rule that says, manufacturer, you are therefore liable for injuries caused by this incorporated device? So one implication of that is if you didn't have such a rule, then the manufacturer of the unsafe product would have an incentive to make its product safer, potentially to come up with some sort of an alternative, no matter what the manufacturer of the safe product said. Even if Company X had said you must use asbestos, a manufacturer down the road and an equipment owner down the road still faces a choice whether to follow that instruction or whether, perhaps knowing that asbestos is unsafe, to come up with a better asbestos or come up with a different insulation. The rule that you're suggesting eliminates that incentive, or at least reduces that incentive, by placing liability on the wrong party. So that's one consequence of it. Second of all, I think drawing a line at required, meaning whether the asbestos is required for the pump or the turbine to operate, is not a clear, administrable line. Because, again, what does it mean to say that it's required? I'm not talking about making it better or worse. Actually, I'm trying to make it as clear as possible that for it to function, without which it cannot operate. Not whether it operates good or bad, or better. I think your answer is it would operate better with the product. I'm talking about a much narrower thing. But even if we say today, even if manufacturer X says today, my product cannot operate without asbestos, there is always the possibility, this happens in manufacturing all the time, that tomorrow somebody is going to come up with a better alternative. And it is the choice of the later supplier, or the later equipment owner, to continue to supply asbestos or to use asbestos, that is the cause of the plaintiff's harm. The cause of the plaintiff's harm is not the initial manufacturer's decision to issue a product manual. Again, this doesn't exist in this case, but hypothetically for purposes of your rule, to issue a product manual that says you must use asbestos. The cause of the plaintiff's harm is the later equipment owner's decision to actually use asbestos rather than procuring an alternative, or the later asbestos manufacturer's decision to manufacture and supply that asbestos rather than ceasing production of asbestos or itself coming up with an alternative. So the other reason why this rule doesn't make sense, even in the required sort of situation that you're positing, the cause of the plaintiff's harm is the supplier-manufacturer of the later asbestos, not the decision up front to manufacture a pump or a turbine or whatever that supposedly requires asbestos. This rule is also consistent with the policies underlying maritime law, and for that reason, again, the court ought to follow the Sixth Circuit's decisions in Stark and Lindstrom. The plaintiff obviously is concerned with the protection of sailors. Our rule does not undermine the protection of sailors. This is simply about placing liability on the party most responsible for the harm. If I could, I wanted to take another little quick hypothetical. You have a sailor at sea, and we have a civilian working on the same vessel in dry dock, not maritime law, exposed to exactly the same products. Under the decision rendered in this case in Conner, the sailor at sea, under the bare metal defense, no recovery. Under the more recent decision by Judge Regreno in Schwartz, the land-based, land-docks person, recovery, exact same exposure. How do you reconcile that? First of all, in most cases, there wouldn't be a different result because the overwhelming majority state rule is consistent with what we're suggesting. And so in most cases, there would be no disparity. If there is a disparity, I would reconcile that by going to the other purposes that underlie maritime law. First of all, the protection of maritime commerce is a particular goal of maritime law. The kind of potentially limitless liability that the plaintiff would create in this case undermines maritime commerce by making commerce so much more expensive and so much more involved and so much more unpredictable. Second of all, maritime law has as its goal uniformity. Even if, in your hypothetical, Your Honor, there are some decisions that say that particular states go the other way from us on this, the overwhelming majority rule is the one that we're advocating, and the Sixth Circuit's rule for maritime Law is the one that we're advocating. So uniformity interests counsel in favor of adopting the rule that we're advocating. And if I could just emphasize for a moment the Sixth Circuit's opinion. Courts of appeals are always, of course, wary of creating circuit splits, but this is particularly an area where it would be problematic to create a circuit split because plaintiffs have very wide latitude in choice of form in maritime law cases. And so creating a rule that adopts the plaintiff's approach in this case would stand in stark contrast with the Sixth Circuit's rule and would have significant consequences because of the form selection possibilities. Lastly, maritime law favors simplicity as a value. We're advocating a bright-line rule that a defendant is only liable for a product that causes harm that it itself places into the stream of commerce. The lines that are in the plaintiff's brief that the plaintiff is advocating today would be an administrative mess because so many products are foreseeably used with others. And even if you had a test of requirement, as I've suggested, the requirement test would not actually be an administrative line that could hold. And so the main purposes of maritime law, promoting commerce, uniformity, simplicity, point all in favor of our rule. And indeed, I acknowledge, of course, that protecting sailors is a purpose of maritime law. But we're not trying to undermine here the protection of sailors. We're simply trying to direct liability to the proper parties. It does so happen, of course, in the asbestos companies that many asbestos manufacturers have gone bankrupt. But even there, some of them have emerged from bankruptcy. There are asbestos trust funds. Our rule is the one that harmonizes all of the principles underlying maritime law. Did the district court in its various opinions as to each of the defendants rely only on strict liability and applying the bare metal defense and not reach whether negligence would provide a theory? No, I think that the proper reading of the district court's decision is that it was applying both. It was discussing both claims. It didn't, in the course of its discussion, specify, here's the strict liability and here's the negligence liability analysis. But the reason for that is that both strict liability and negligence require a duty with respect to a particular product. And the duty analysis is the same for negligence and strict liability. The duty only applies to the product that causes harm that the defendant places into the stream of commerce. And under the test that we're advocating, there's no evidence in the record to support the argument that any of the plaintiffs supplied any of the asbestos that injured Mr. DeVries. With respect to GE and CBS, the allegations there are that Mr. DeVries was injured by external asbestos insulation attached to their products. The evidence is that the Navy specified the use of that asbestos and the Navy is the one that installed and provided that asbestos, not CBS and GE. With respect to Foster-Wheeler and the pump manufacturers, the plaintiff concedes there that those products, the asbestos products, within the pumps and the Foster-Wheeler condensers were routinely replaced and there's no evidence in this record that the plaintiff can identify the replacement asbestos that was used. The only evidence that the plaintiff cites that any of these manufacturers supplied any asbestos to the Navy has to do with other cases that don't mention the Turner. In some instances, don't even mention the Navy at all. For example, with respect to GE, the plaintiff relies on an Exhibit B. This has to do, apparently, I can tell this only from the bait stamp on the document, with a land-based turbine in Arizona. And the document is dated some 15 years after the Turner was built. So in no way does that support the idea that GE supplied asbestos for the Turner. Likewise, with respect to CBS, Mr. DeVries admitted in his deposition that he didn't know whether Westinghouse supplied any of the asbestos insulation at issue. His own witness confirmed that Westinghouse never recommended any such materials. That's Joint Appendix 682. And his own evidence, a purchase order at Joint Appendix 695, further confirms that insulation was provided and installed by the shipbuilder. With respect to Foster-Wheeler, this is at Joint Appendix 1147 and 1151-53. There's simply no evidence that Foster-Wheeler made or supplied any of the asbestos-containing gaskets for the condensers at issue. And lastly, with respect to the pump manufacturers, again, this is at Joint Appendix 1464-65, 67, and 1503. Mr. DeVries himself admitted that he didn't know where the Navy got those replacement gaskets. And the only evidence in the record that he relies on to show that the pump manufacturers did supply such materials had nothing to do with the Turner or with this time period or with these particular pumps at issue. So both on the law and the facts, we urge you to affirm the district court below. Thank you very much. Thank you. I would like to respond to the policy argument of simplicity and of that the plaintiff has a remedy against the suppliers of those products. As you just heard from my learned opponent, that remedy does not exist in this case, nor does it exist in most cases, because it is extremely difficult for a sailor on a ship to identify the products that are coming off and going on the ship. So the question is a question of responsibility. And it is generally so that the manufacturer of a piece of machinery is responsible for the components. The exception here is that these components are dangerous, they're renewable, they're replaceable, they wear out, all of which we agree with, but the manufacturer knows it. And by the way, as you look through the record, you can see the specifications for these products. The specifications include asbestos gaskets, asbestos packing, and that they know that these things are going to have to be renewed. There is no violation of the policies underlying maritime law in imposing liability under such situations. But the specifications that you've identified that were in the record don't necessarily come from each one of the defendants on appeal, correct? They come from the Navy? Well, yes, because these were naval parts. So the direction is by the Navy, not the manufacturer. Well, but they were sort of joint things, because they were sent out and the manufacturer agreed to supply the machinery that conformed with these specifications. If I might add, by the way, while these are marine turbines, there's no major difference between land-based turbines and marine-based turbines. They're simple machines. They work the same way. The sizes differ. The shapes differ. But pumps, condensers, turbines, they all pretty much work the same way. With respect to the May case, they refer to maritime law in footnote 8. They discuss the Sixth Circuit cases. Is May presently on appeal to the Maryland Supreme Court? No, it was decided by the Maryland Court of Appeals. This was decided by the highest court in Maryland. So, again, the discussion of the policy there, I don't need to repeat it for you. It's there. I think that that is a good working rule. Unless this court has further questions. Thank you. Thank you very much. Thank you very much. You have very interesting arguments in this case. Thank you.